## BANK OF SOUTHWESTERN GEORGIA *et al. v.* McGARRAH

*et al.*, executors, and *vice versa.*

1. Where real estate is purchased by a partnership with partnership funds, or is acquired as the result of a partnership transaction, and is used by the firm solely for the purpose of partnership profit, it is in a legal sense partnership property.
2. Under such circumstances, the fact that the partnership was originally formed for the purpose of carrying on a warehouse and commission business (without any limitation, however, upon its power to extend its operations to other lines of business), and that the real estate was devoted to a farming venture, does not deprive the land of its character as partnership property.
3. The legal title to real estate can never vest in a partnership as such, but is in the partners as tenants in common. Upon the dissolution of an insolvent partnership, however, by the death of one of the partners, the survivor may convey such an equitable interest in the entire property as will enable his vendee to compel a conveyance by the heirs of the deceased partner of the legal title to the interest of their decedent.
4. An assignment of error in a bill of exceptions, complaining that the decree rendered by the court did not follow the verdict of the jury, is without merit when it appears that had the decree been rendered as urged, it would have been contrary to law.
5. One whose only interest in the litigation is as stockholder of a corporation which is a party thereto is not thereby incompetent to testify as to transactions and communications with a deceased opposite party at interest.
6. A witness is not incompetent to testify by reason of the provisions of the Civil Code, § 5269, when his evidence does not relate to transactions or communications with the deceased opposite party at interest.

Argued June 18, — Decided August 12, 1904.

Equitable petition. Before Judge Littlejohn. Sumter superior court. January 13, 1904.

Citations by counsel, other than those in the opinion : Civil Code, §§ 2626, 2647, 2649, 3641, 3715, 3722, 3924; *Ga. R.*

15/445 (3); 43/325; 71/18; 75/795; 76/328; 78/333; 79/528; 81/491; 108/8; 110/345; 116/176 (2); 96/625; 103/108 (1), 110; 116/658; Acts 1897, p. 53; George on Partnership, 132–6, 410; 22 A. & E. Enc. L. (2d ed.) 88–93, 96–99, 220; 17 Id. (1st ed.) 945; 21 U. S. (L. ed.) 642, notes; 7 L. R. A. 788–9.

*E. A. Hawkins* and *W. A. Dodson,* for Bank of Southwestern Georgia et al. *W. P. Wallis* and *J. H. Lumpkin,* contra.

CANDLER, J. We quote from the statement of facts made by Mr. Justice Cobb when this case was before this court on a former occasion (117 *Ga.* 556) so much as is pertinent to the decision now to be rendered: " The decedent Samuel McGarrah, and the defendant M. B. Council, entered into a partnership in 1887, for the purpose of engaging in the warehouse and commission business, the partners taking an equal interest in the business. In 1890 the tract of land which forms the principal subject-matter of the controversy, together with its appurtenances, was conveyed to the partnership." The land was cultivated by the partnership until 1899, when McGarrah rented it from the firm of which he was a member, giving his note to the firm for the amount of the rent. At the same time, Council & McGarrah gave to the Bank of Southwestern Georgia their promissory note for $4,624.58, depositing as collateral security therefor the rent note of Samuel McGarrah. A few days subsequently they also gave the bank a mortgage on the land to secure the note referred to, " and all other notes or drafts which the grantor may execute to the grantee within twelve months." " The defendant Council also gave to the bank his individual obligation for a specified sum of money, as security for the payment of the debts due it by the partnership. Samuel McGarrah died on December 6, 1901. On December 30, 1901, the bank rented to E. Ross McGarrah and John M. McGarrah, two of the plaintiffs, the land which had been mortgaged to it by the partnership, together with certain personal property described in the rent contract, which was to expire on December 15, 1902. In August, 1902, M. B. Council, as surviving partner of the firm of Council & McGarrah, executed to the bank a deed to the land in controversy, in payment of the. debt due the bank by the partnership, and upon the execution of

this deed the bank canceled the mortgage given by the partner-
ship and surrendered it to Council.     When the rent contract
made by the two McGarrahs with the bank expired, the bank
sent its agent to take possession of the property.     Much contro-
versy and negotiation resulted from the effort made by the bank
to acquire possession, and finally E. Ross McGarrah, who was in
possession under the rent contract, moved away, and M. P. Pick-
ett, one of the plaintiffs, entered into possession and claimed to
hold the property as agent for the executors of Samuel McGarrah.
After this the plaintiffs' petition was filed." It claimed that the
deed from Council to the bank was collusive and fraudulent, and
conveyed no title as against the interest of the estate of Samuel
McGarrah, and prayed that the bank be enjoined from dispposses-
sing petitioners from the land in dispute; that the deed from
Council to the bank be set aside as null and void, and that title
to the property be decreed to be in them as executors of Samuel
McGarrah, upon the payment by them of a named sum of money.
The defendants duly answered, and also filed a cross-petition in
which they prayed that the plaintiffs, as executors of Samuel Mc-
Garrah, if permissible under his will, or as his heirs at law, "be
required and compelled to convey unto the Bank of Southwestern
Georgia the legal title to said real estate in said petition men-
tioned, and that a decree be had decreeing the legal title to be in
the defendant, the Bank of Southwestern Georgia, to said real
estate."     The case came on for trial, when, after the introduction
of evidence and argument by counsel, the court charged the jury,
restricting their finding to two questions, viz., did the real estate
in dispute constitute "assets of the partnership in the meaning
of the law in reference to real estate being the assets of a part-
nership;" and if not, "then what amount was due upon that
mortgage to the Bank of Southwestern Georgia at the time of this
conveyance on the part of M. B. Council, as surviving partner, to
the Bank of Southwestern Georgia?"     The verdict was as follows:
"We the jury find for the plaintiff.     Also that the deed made
by M. B. Council to Bank of Southwestern Georgia be canceled,
and that balance on mortgage at time of tender was $2,398.17."
The judge thereupon passed an order making the verdict of the
jury the judgment of the court, and decreeing, further, that the
deed from Council to the bank conveyed only a half interest in

the land in controversy, and that the legal effect of the conveyance was to discharge only one half of the indebtedness due the bank; that title to the remaining half interest was in the estate of Samuel McGarrah, chargeable, however, with one half of the debt mentioned, against which certain credits were to be set off, reducing the amount due the bank by the estate to a sum specified; that the deed from Council to the bank, in so far as it sought to convey the interest decreed to be in the estate of Samuel McGarrah, was a cloud upon the title of the estate, and was to that extent null and void; that title to the personalty covered by the rent contract from John M. and E. Ross McGarrah to the bank was in the bank, and that the estate of Samuel McGarrah had no interest therein; and directing the disposition of the funds in the hands of the receiver previously appointed, in a manner specified. The defendants filed a motion for a new trial, which was overruled. They except to the refusal of a new trial, and also to the rendition of the decree to which reference has been made. The plaintiffs also filed a cross-bill of exceptions, to which attention will be given further on.

1–3. We apprehend that the decision of this case turns largely upon whether or not the court below was correct in the following charges of which complaint is made: "I charge you, gentlemen, that where real estate is purchased by a partnership with the partnership assets or money, and the property is conveyed to the partnership, the title to the property (real estate) would vest in the individual parties. If that property is conveyed to the partnership for the use of the partnership, and is actually used in the partnership business, then at the death of one of the parties, at the dissolution of the partnership by the death of one of the partners, there would be a title, such an equitable title in the surviving partner that he could convey land in satisfaction of the debts of the partnership. If, upon the other hand, such property was purchased with the assets of the partnership, or with the money belonging to the partnership, and a conveyance was made conveying the property to the partners, in the partnership name, if that real estate is not used in carrying on the partnership business, then it would not vest such title in the partnership,—it would not be partnership assets in such manner that the surviving partner would have the right to convey the interest of the

deceased partner." "There has been introduced before you an agreement, articles of partnership, between M. B. Council and Samuel McGarrah, as the articles of partnership upon which they entered into the copartnership that you have heard referred to by the witnesses in this case. Under those articles of copartnership the business as stipulated there is to carry on a warehouse and commission business; and if in carrying on the warehouse and commission business they should purchase real estate with the proceeds arising from the partnership, or with the assets or money of the partnership, and the farm used for rent, that would not be in contemplation of law a use of that real estate in the partnership business to such an extent that would authorize a surviving partner to convey that land in settlement of the debts or as payment of the debts of the partnership. If real estate purchased by the partnership is actually used in carrying on the partnership business and the business of the partnership is organized for farming, and it is used in carrying it on, then it would put such title in the surviving partner at the death of one of the partners as would authorize him to sell and convey it in the payment of the debts. If it was used by the partners in a different manner, or for a different purpose than that of carrying on the partnership business, then it would not put such title in him that he could convey it in that manner; the surviving partner would not have the right to administer it by selling and conveying the interest of the deceased partner in satisfaction of the debts of the copartnership." At common law, when real estate was conveyed to a partnership, the title vested in the individual partners as tenants in common, but "in equity, real estate of the firm is considered personal property to the extent necessary to pay debts. The surviving partner can dispose of the entire equitable interest therein, and the purchaser may compel a conveyance from the heirs of the deceased partner." Civil Code, § 2649. In *Taylor* v. *McLaughlin*, 120 *Ga.* 703, it was said that this is not an arbitrary rule declaring that in all cases the title to property conveyed to a partnership is in the firm and not in the individuals composing it, but that the rule "grew out of the peculiar nature of the partnership relation, and was designed to give substantial justice between the partners themselves and between the individual and the firm creditors of the partners, in the adjustment of the partnership af-

fairs." It will be noted that § 2649, cited above, has general application to "real estate of the firm," and is not limited to real estate used for any particular purposes; and the question therefore arises, is realty not used in the prosecution of the business of the partnership in a proper legal sense "real estate of the firm?" In *Ferris* v. *Van Ingen*, 110 *Ga.* 102, this court, speaking through the Chief Justice, said: "We believe the law to be that whenever a firm purchases real estate in the firm name, with partnership funds, for partnership purposes, and actually uses it for such purposes, it does become partnership property. . . This being so, equity will, in winding up the partnership and paying the debts, treat real estate as partnership assets." We do not, however, understand the words "for partnership purposes" to mean that the principle applies only when the real estate is used in furtherance of the original design for which the partnership was formed. A firm may, as is often the case, extend its operations beyond what was at first intended. In doing so it does not cease to be a partnership, nor are the purposes for which these extended operations are conducted, on that account, any the less "partnership purposes." The more reasonable view, in our opinion, is that if the profits derived from the real estate go into the partnership assets, and the expenses attendant upon the uses to which it is put are borne by the firm, the property is used for partnership purposes, and becomes, within the meaning of the rule under discussion, partnership property.

We think it is clear that the legal title to real estate can never vest in a partnership as such. *Baker* v. *Middlebrooks*, 81 *Ga.* 494, and cit. As before stated, this was a rule of the common law, which has been repeatedly announced by this court to be the law of Georgia. But in the winding up of partnership affairs, to treat the partners in all cases as tenants in common of land bought during the continuation of the partnership, with partnership money and as a part of the partnership enterprise, would give rise to numerous complications and render more difficult the adjustment of claims against the firm. To obviate these difficulties, and to facilitate the winding up of partnership affairs on the death of a partner, a court of equity will give to the surviving partner an equitable title in the interest of his deceased cotenant in the land, and a conveyance by him of the interest so acquired

will enable his vendee to compel a conveyance by the heirs of the deceased partner of his interest in the land. "The surviving partner, being charged with the payment of the partnership debts, has the right, in equity, to dispose of its real estate for that purpose; and though his deed will not convey the legal title to a purchaser, it will convey this equity to him, and through it he may compel the heir to convey the legal title." *First National Bank* v. *Cody*, 93 *Ga.* 154; Civil Code, § 2649. In the present case it is not denied that the real estate in dispute was acquired by Council & McGarrah as the result of a partnership transaction, and paid for with partnership funds; that the farm was maintained at the expense of the partnership, or that the partnership received all the profits arising from its operation. There appears to have been no legal obstacle to the firm's extending its operations to a farming venture, nor is it contended that such an obstacle existed. We are therefore led irresistibly to the conclusion that the able and learned trial judge was in error in holding that unless the land was used in prosecuting the warehouse and commission business contemplated by the original articles of partnership, the surviving partner could not convey to the bank such an equitable title to the land as would enable it to compel in turn a conveyance from the heirs of the legal title, under the provisions of the Civil Code, § 2649. We think it is clear, from the admitted facts disclosed by the record, that upon the death of Samuel McGarrah, the firm of Council & McGarrah being at the time insolvent, Council as surviving partner, in winding up the affairs of the firm, had the right to make the disposition of the land indicated; and that while his deed to the bank did not convey the legal title to it, it did, as was said in *First National Bank* v. *Cody*, supra, convey an equity through which the bank may in turn compel the heirs to convey the legal title.

The foregoing decides the case made by the main bill of exceptions on its substantial merits, and carries with it a decision of the other points made by the record. The rulings complained of necessarily followed from the view which the judge entertained of the law governing the case on the point which we have already discussed, and a detailed treatment of those rulings would involve idle repetition and be useless.

4-6. The cross-bill of exceptions shows no reason for reversing the judgment. It complains that the decree did not follow the

verdict, which was for the plaintiff generally, in that title to the personal property involved in the litigation, and which had been conveyed by Council together with the realty, was adjudged to be in the bank, whereas, in conformity to the verdict, the decree should have awarded a half interest therein to the plaintiffs. Inasmuch as title to the personalty unquestionably vested in the surviving partner (Civil Code, § 2648), and the verdict would therefore have been contrary to law in so far as it sought to give the plaintiffs any interest therein, there is no merit in this contention.     Error is also assigned upon the admission of the evidence of specified witnesses who were stockholders in the Bank of Southwestern Georgia, as to transactions and conversations with Samuel McGarrah in his lifetime, on the ground that these witnesses were incompetent by reason of interest in the litigation. The decision of this court in *Cody* v. *First National Bank*, 103 *Ga.* 789 (3), settles this point adversely to the contention now made.     A similar objection was made to the evidence of Council, but after a careful reading of the evidence as it appears in the cross-bill, we do not think it can be fairly said to relate, in a legal sense, to transactions or communications between the witness and the deceased.

*Judgment on the main bill of exceptions reversed; on the cross-bill affirmed. All the Justices concur.*